PER CURIAM.
The State charged the Defendant with three counts of attempted first-degree murder. The Defendant’s first trial resulted in convictions for attempted second-degree murder on counts II and III and a hung jury on count I. At the Defendant’s second trial, he was convicted of attempted first-degree murder on count I. He now appeals his conviction on count I, arguing that the trial court abused its discretion in refusing to grant his motion for mistrial to pursue additional evidence relating to his insanity defense. He also argues that the trial court erred in calculating the proper amount of credit for time served, but because we agree that the trial court abused its discretion in refusing to grant a mistrial, the error in sentencing becomes moot. We reverse the Defendant’s conviction on count I and remand for a new trial.
The Defendant, who is Ukranian, intended to rely on an insanity defense. On the first day of his retrial, the jury was selected and sworn. At the beginning of the second day, defense counsel represented to the trial court that the previous night, the Defendant had given him a letter from the Ukraine, which was written in Ukrainian using the Cyrillic alphabet. Defense counsel stated that as soon as he received the letter, he gave it to the trial interpreter for translation. According to the letter, the Defendant had suffered severe cranial brain trauma, “has a convulsive syndrome ... [with a] state of mind said to be dark and obscure.” The letter also stated the Defendant was hospitalized in a psycho-neurological hospital for treatment and declared “mentally incompetent, or insane.”
Defense counsel reminded the trial court that in the months he had been working on the case, the court had, on several occasions, allowed him continuances in order to pursue this type of evidence. He stated that now, this evidence came rather unexpectedly, apparently through the Defendant’s family. He represented that he was otherwise prepared to go to trial, but that information like this that demonstrated past mental illness was “exactly what we’ve been trying to get for some time” and that it was “extremely important evidence” for the defense. Defense counsel explained he needed to be able to present this background information to the three court-appointed psychologist witnesses who had examined the Defendant. He stated this information was important because two of them had said if the defense “could get some concrete evidence of what his mental state was before he came to this country, that it might make a very big difference as to their diagnoses.” According to defense counsel, one of the court-appointed psychologists testifying for the *1140 State had said specifically that although he had concluded the Defendant was not insane at the time of the offense, more evidence might change his mind. With this said, defense counsel moved for a mistrial. He explains on appeal that he moved for a mistrial rather than a continuance for fear investigation into this matter would be time-consuming and that thus, he believed the jury would be best discharged.
The prosecutor stated that she was concerned the Defendant had been in custody for a long time, that the victim’s family had already been through one trial, and that she did not want to go through another trial, only to have it later reversed because the Defendant’s motion should have been granted. The prosecutor never stated the State’s case would have been prejudiced by discharging the jury to allow the Defendant to investigate the letter. The trial court expressed concern that ultimately, the letter may or may not be helpful to the defense. The trial court also stated that had the letter been received earlier, they probably would not have picked a jury. The trial court denied the Defendant’s motion, and the case proceeded to trial.
In presenting his insanity defense at trial, the Defendant called three witnesses to testify on his behalf. Two witnesses, a case manager and a psychiatrist nurse practitioner, testified that the Defendant was disoriented, paranoid, hallucinating, and psychotic, symptoms that diminished somewhat with medication. The third witness, one of the three court-appointed clinical psychologists, testified the Defendant suffered from a delusional disorder and that the delusions were present at the time of the offense. According to him, the Defendant did not know what he was doing at the time of the offense and thought he was protecting himself from the victim. He further remarked that in order to completely understand the Defendant’s clinical picture, it would have been helpful to know of prior hospitalizations.
In rebuttal, the State presented the testimony of the other two court-appointed doctors. One testified that when he first examined the Defendant, he thought him to be incompetent to stand trial and could not form an opinion on his competence at the time of the offense. Upon later examination, this doctor concluded the Defendant was faking his symptoms and was competent at the time of the offense. The other doctor testified that the Defendant was paranoid and suffering from a mental defect at the time of the offense, but that he knew at the time of the offense what he did was wrong.
The jury found the Defendant guilty of attempted first-degree murder. The trial court sentenced the Defendant to thirty years prison, after which it signed a stipulated order to produce the Defendant’s records from the Mental Health Organization of the Ukraine.
Ruling on a motion for mistrial is based on the trial court’s sound discretion. See Power v. State, 605 So.2d 856 (Fla.1992). A motion for mistrial should be granted only when necessary to ensure the defendant receives a fair trial and only when the error committed was so prejudicial it vitiated the entire trial. See Duest v. State, 462 So.2d 446 (Fla.1985).
Here, the letter from the Ukraine represents evidence that goes to the very heart of the case: the Defendant’s state of mind at the time of the offense. The Defendant had been trying to secure this information for some time and the information was not easy to come by, considering the origin of the information is a foreign country and involves rather unusual translation. There is no finding — and nothing in the record to suggest — that the Defendant sought to delay trial for any improper reason. The record also fails to reveal that the State would have been prejudiced by a mistrial at that juncture.
Moreover, contrary to the State’s argument, the evidence hoped to be gained was more than simply evidence cumulative to *1141 the defense’s trial evidence. Rather, the evidence hoped to be gained had the potential to change the conclusion of one of the court-appointed psychologists who testified for the State that the Defendant was sane at the time of the offense. Given the nature of the information the Defendant was precluded from pursuing — information that bore directly upon his sanity and legal culpability — the failure to grant a mistrial under these circumstances undermined the fairness of the trial. See Duest, 462 So.2d at 448.
Accordingly, the trial court abused its discretion in failing to grant the Defendant’s motion for a mistrial. See Power, 605 So.2d at 861. The Defendant’s conviction on count I for attempted first-degree murder is reversed.
REVERSED AND REMANDED.
GUNTHER, TAYLOR and HAZOURI, JJ., concur.